# IN THE UNITED STATES DISTRICT COURT
# FOR THE SOUTHERN DISTRICT OF OHIO
# WESTERN DIVISION AT DAYTON

KEITH DONALD GOLDBLUM,

           Petitioner,    :    Case No. 3:16-cv-254

  - vs -                             District Judge Walter Herbert Rice
                                        Magistrate Judge Michael R. Merz

WARDEN, Chillicothe Correctional
Institution

                               :

           Respondent.

## ORDER TO PAY FILING FEE;
## REPORT AND RECOMMENDATIONS

This habeas corpus case is before the Court for decision on the merits. Petitioner filed the Petition pro se (ECF No. 1) but a Reply through counsel (ECF No. 15). Respondent filed an Answer/Return of Writ (Doc. No. 8).

Petitioner has never paid the filing fee in this case, nor sought leave to proceed *in forma pauperis*. Considering that he is now represented by retained counsel, he is ORDERED to pay the filing fee ($5.00) forthwith.

Goldblum pleads the following seven Grounds for Relief:

> **GROUND 1:** Petitioner's due process rights were violated under the 14th Amendment based on insufficient evidence in Counts One, Two, and Three.
>
> **Supporting Facts:** There were no witnesses and no evidence of invasion of privacy. There was no secretive or surreptitious activity. There was no evidence, including testimony, of the

element, "for the purpose of sexually arousing or gratifying (one's) self."

**GROUND 2:** Petitioner's due process rights were violated under the 14th Amendment based on insufficient evidence in Counts 4 and 6-14.

**Supporting Facts:** There was no physical or psychological evidence of abuse; no blood, no injury, no DNA, no psychological markers of abuse. There were no complaints before the February 18, 2011, allegation. The physical condition limitations of the petitioner on February 18, 2011, were inconsistent with the alleged act. There were no witnesses to the allegedly hundreds of assaults over many years, always in the presence of at least one other, including co-complainants.

**GROUND 3:** Petitioner's due process rights were violated under the 6th and 14th Amendments when the State used leading questions despite objections.

**Supporting Facts:** The State developed much of its case through the use of leading questions on direct examination. State's witnesses were not of "tender years" or limited intelligence. The trial court erred in its definition of "leading question." This resulted in substantial prejudice to the petitioner.

**GROUND 4:** Petitioner's right to a fair trial under due process was violated under the 5th, 6th, and 14th Amendments by prosecutorial misconduct.

**Supporting Facts:** The State used "class warfare" comments to inflame the passions of the jury. The State's referencing items in closing that were not present as evidence in trial.

**GROUND 5:** Petitioner's due process rights were violated under the 5th, 6th, and 14th Amendments when he was sentenced to non-minimum, consecutive sentences as a first-time offender.

**Supporting Facts:** The trial court initially failed to make the necessary findings on record of facts supporting non-minimum, consecutive sentences. While this was remanded back to the trial court for a nunc pro tunc entry, this should have resulted in a void sentence and a remand for the minimum concurrent sentences as envisioned and intended by the Ohio State Assembly in Senate Bill 2 and House Bill 86.

>**GROUND 6:** Petitioner's due process rights were violated under the 6th and 14th Amendments due to the prejudicial effect of cumulative errors.
>
>**Supporting Facts:** The cumulative effect of all the errors by the trial court and prosecutors that may be found harmless or otherwise individually, denied the petitioner due process and a fair trial.
>
>**GROUND 7:** Petitioner's due process rights were violated under the 6th and 14th Amendments with the trial court reversal of its prior decision for severance.
>
>**Supporting Facts:** The trial court established that the risk of prejudice to the petitioner of joinder was "extreme" in sustaining petitioner's motion to sever. That prejudice remained when the court reversed itself. The trial court's "decision/entry and order" is a final, appealable order, thus not subject to a motion for reconsideration and subsequent reversal. The State's late filing of its motion for reconsideration was in violation of Ohio's criminal rules and not supported by "good cause" exception. The jury was unable to make a simple and direct evaluation of the indictments regarding each alleged victim individually.

(Petition, ECF No. 1, PageID 1-16.)

## Procedural and Factual History

Goldblum was indicted by the Montgomery County Grand Jury in 2012 on one count of attempt to commit voyeurism (Ohio Revised Code § 2907.08(C)/2923.02(A)(1)) (Count 1); three counts of voyeurism (Ohio Revised Code § 2907.08(C)) (Counts 2, 3 and 4) (count 4 was later amended to include the language "for the purpose of sexually arousing or gratifying himself"); nine counts of rape (victim less than 13) (Ohio Revised Code § 2907.02(A)(1)(b)) (Counts 5-9 and 11-14); two counts of menacing by stalking (Ohio Revised Code § 2903.211(A)(B)(2)(d)) (Counts 10 and 17); and two counts of unlawful sexual conduct with a minor (Ohio Revised Code § 2907.04(A)(B)(3)) (Counts 15-16) (State Court Record, ECF No. 7, PageID 34).

3

Prior to trial, the State dismissed one count of voyeurism relating to victim M.W.[1] and two counts of menacing and during trial, the State dismissed one count of rape involving R.D. The jury found Petitioner guilty on all remaining counts. Goldblum was sentenced on July 23, 2013, to a total prison term of 21 years (State Court Record, ECF No. 8, PageID 113).

Goldblum appealed to the Court of Appeals of Ohio, Second Appellate District, Montgomery County who set forth the facts of this case as follows:

> **[\*P3]** Over the course of almost a decade, Keith Goldblum molested his niece, N.D., and some friends of his daughter, L.G., during sleepovers and slumber parties held at his home. All of the victims described a similar pattern: Goldblum came into the room while the girls were sleeping, lifted the blankets off the girls, pulled down their pajama bottoms and underwear, and inserted either his fingers or an object into their vaginas or gazed at their exposed pubic area.
>
> **[\*P4]** Goldblum began molesting his niece, N.D., when she was five years old. He would come into the room where she was sleeping with L.G., pull off her covers and clothing, and then touch her and insert his fingers into her vagina. She would pretend to wake up or turn over, and he would eventually stop and leave the room. As she got older, she would try different things to prevent the molestation, with varying degrees of success. Tr. 635–667.
>
> **[\*P5]** R.D. was a close friend of L.G. One night when she was sleeping over at L.G.'s house, she awoke and found Goldblum standing over her side of the twin bed. Goldblum pulled away her covers, slid her pajamas and underpants down, and put a finger in her vagina. He removed his finger when she pretended to stir in her sleep. Later, in the same year, she fell asleep with L.G. on a pull-out couch in the living room. Once again, she awoke to find the covers pulled off, her pajama bottoms pulled down, and Goldblum staring at her pubic area. He was illuminating her pubic area with a flashlight, but then put down the flashlight and inserted something thin and cold, possibly a pen, into her vagina. Goldblum and L.G. eventually moved to a new house, but the same thing happened during sleepovers at the new house. Consequently, R.D. stopped coming over for sleepovers. Id. at 299–325. During the time that Goldblum was molesting R.D., occasionally she would pretend to wake up in the middle of the molestation, and Goldblum would

---

[1] The minor victims are referred to herein by initials.

4

>make an excuse that he was looking for the cats. Id. at 303, 317–318.
>
>[*P6] M.W. was friends with L.G. since third grade. Goldblum began molesting M.W. when she was 11 or 12 years old. The first time it happened, Goldblum stood next to the twin beds in L.G.'s room, he lifted the sheet and pulled away her underpants, and he gazed at her pubic area. She then dove back under the covers, and he left the room. The same thing happened several times when she slept over with L.G. Id. at 377–407.
>
>[*P7] J.R. also was friends with L.G. On the morning of February 18, 2011, J.R. and a number of other girls spent the night at L.G.'s home. J.R. awoke early the next morning to find Goldblum pulling off her blankets and tugging on the drawstring of her sweatpants. She jumped back and asked him "what the hell" he was doing. He backed off, told her to be quiet, and said he was looking for the cats. J.R. told the other girls, including L.G., what Goldblum had done, then locked herself in the bathroom until her sister came and picked her up. L.G. went with J.R. and M.W. that morning to discuss the abuse with school officials. Id. at 503– 535.
>
>[*P8] That night, L.G. and N.D. told L.G.'s mother about the confrontation between J.R. and Goldblum. The family confronted Goldblum about J.R.'s accusations, and Goldblum explained that he was just looking for the cat. N.D. told the family that he had used that excuse before and that he had been abusing her for years. The next day, N.D. disclosed the abuse to her mother, aunt, grandmother, and a family friend. Id. at 664–672. Subsequently, Goldblum was arrested.

Following the briefing on the appeal, the Court of Appeals affirmed the judgment of the trial court. *State v. Goldblum*, 2014-Ohio-5068, 2014 Ohio App. LEXIS 4932 (2nd Dist. Nov. 14, 2014); appellate jurisdiction declined, 142 Ohio St. 3d 1517 (2015). It should be noted that the appellate court remanded the case for an amended sentencing entry to include the statutory findings for consecutive sentences that the trial court had made at the sentencing hearing. The trial court issued a nunc pro tunc termination entry that included the statutory findings on November 18, 2014 (State Court Record, ECF No. 8, PageID 263).

5

The instant case was filed on June 20, 2016, a year after the Ohio Supreme Court declined jurisdiction (ECF No. 1).

## Analysis

**Grounds One, Two, Three, Four, and Five**

The Warden asserts that Grounds One through Five are barred by Goldblum's procedural default in presenting them to the Ohio courts. Goldblum does not contest the bar as to Grounds Four and Five and the Magistrate Judge offers no analysis on those claims.

As to all five of these grounds the Respondent asserts they are barred by Goldblum's failure to present them on direct appeal to the Ohio Supreme Court. Goldblum does not contest the assertion that these claims were not presented to the Ohio Supreme Court. Instead, he claims he can avoid that procedural default because his conviction is a miscarriage of justice (Reply, ECF No. 15, PageID 1801). In arguing this claim, he does not present any new evidence of actual innocence, but asks this Court to review the evidence under *Jackson v. Virginia*, 443 U.S. 307 (1979), and find it is insufficient. *Id.* at PageID 1802.

There is no separate "fundamental miscarriage of justice" exception to the procedural default doctrine. The "miscarriage of justice" standard, which is sometimes used synonymously with "actual innocence," requires some showing of actual innocence. In other words, they are the same standard, not alternative ways of avoiding a procedural default. *Dretke v. Haley*, 541 U.S. 386, 393 (2004); *Calderon v. Thompson*, 523 U.S. 538 (1998). In the habeas corpus context, in order to establish that relief is required to prevent a grave miscarriage of justice, a

6

petitioner must make a strong showing of actual innocence. *Calderon*, 523 U.S. at 557-58 (holding that "avoiding a miscarriage of justice as defined by our habeas corpus jurisprudence" requires "a strong showing of actual innocence"); see *Sawyer v. Whitley*, 505 U.S. 333, 339 (1992).

> Regarding the required showing of actual innocence, the Sixth Circuit has held:
>> [I]f a habeas petitioner "presents evidence of innocence so strong that a court cannot have confidence in the outcome of the trial unless the court is also satisfied that the trial was free of nonharmless constitutional error, the petitioner should be allowed to pass through the gateway and argue the merits of his underlying claims."  *Schlup v. Delo*, 513 U.S. 298, 316 (1995)." Thus, the threshold inquiry is whether "new facts raise[] sufficient doubt about [the petitioner's] guilt to undermine confidence in the result of the trial." *Id*. at 317. To establish actual innocence, "a petitioner must show that it is more likely than not that no reasonable juror would have found petitioner guilty beyond a reasonable doubt." *Id*. at 327. The Court has noted that "actual innocence means factual innocence, not mere legal insufficiency." *Bousley v. United States*, 523 U.S. 614, 623, 140 L. Ed. 2d 828, 118 S. Ct. 1604 (1998). "To be credible, such a claim requires petitioner to support his allegations of constitutional error with new reliable evidence -- whether it be exculpatory scientific evidence, trustworthy eyewitness accounts, or critical physical evidence -- that was not presented at trial." *Schlup*, 513 U.S. at 324. The Court counseled however, that the actual innocence exception should "remain rare" and "only be applied in the 'extraordinary case.'" *Id.* at 321.

*Souter v. Jones*, 395 F.3d 577, 590 (6th Cir. 2005).

Goldblum has presented no new evidence – evidence not presented at trial – of actual innocence. Hence he is unable to overcome his procedural default in failing to present Grounds One, Two, and Three so the Ohio Supreme Court on direct appeal.

**Ground Six:  Cumulative Errors**

In his Sixth Ground for Relief, Goldblum asserts that the cumulative errors at his trial violated his Sixth and Fourteenth Amendment rights.

Respondent asserts Ground Six is not cognizable in habeas corpus (Return, ECF No. 8, PageID 1778, citing *Williams v. Anderson*, 460 F.3d 789, 816 (6th Cir. 2006) (citing *Moore v. Parker*, 425 F.3d 250, 256 (6th Cir. 2005)); *Scott v. Elo*, 302 F.3d 598, 607 (6th Cir. 2002); *Lorraine v. Coyle*, 291 F.3d 416, 447 (6th Cir. 2002).

Petitioner makes no response to this defense and the Court agrees it is dispositive.  The Court notes that the Sixth Circuit has held that post-AEDPA, that claim is not cognizable. *Sheppard v. Bagley*, 657 F.3d 338, 348 (6th Cir. 2011), *cert. denied*, 132 S.Ct. 2751 (2011), *citing Moore v. Parker*, 425 F.3d 250, 256 (6th Cir. 2005), *cert. denied sub nom. Moore v. Simpson*, 549 U.S. 1027 (2006).

**Ground Seven:  Severance**

In his Seventh Ground for Relief, Goldblum asserts his rights to a fair trial under the Sixth Amendment and to due process under the Fourteenth were violated when the trial court refused to sever the allegations of separate complaining witnesses for separate trials.

As presented, this Ground for Relief has two sub-claims.  The trial court initially granted a motion to sever, then, on the State's motion, reconsidered and reversed that conclusion.  In the body of his Petition, Goldblum asserts the trial court had no authority to reconsider its severance decision because that decision was a final, appealable order.

The Second District considered this claim on direct appeal and held

> **[\*P28]** Initially, we will address Goldblum's contention that the trial court was without authority to reconsider its ruling regarding Goldblum's motion to sever. The trial court's ruling on Goldblum's motion to sever was interlocutory in nature. Therefore, the trial court had the inherent authority to reconsider its ruling. Once the State brought a recent Supreme Court of Ohio decision to the trial court's attention, it was reasonable for the trial court to reconsider its previous determination. Consequently, we find no error in the trial court's decision to reconsider its ruling on Goldblum's motion to sever.

*State v. Goldblum*, *supra.*

Whether an Ohio trial court has authority to reconsider its granting of a motion to sever is entirely a question of Ohio law. To put it another way, there is no federal constitutional bar on allowing a state trial court to reconsider a decision.[2] The Court does not read the reply to contest this point.

Rather, the Reply argues the merits of the severance question as a matter of federal constitutional law. The Second District considered this question on the merits and held:

> **[\*P27]** Goldblum's Third and Fourth Assignments of Error state:
>
> THE APPELLANT WAS DENIED DUE PROCESS AND A FAIR TRIAL WHEN THE TRIAL COURT SUBSTANTIVELY MISAPPLIED *STATE v. WILLIAMS*, 134 OHIO ST. 3D 521, 2012-OHIO-5695, 983 N.E.2D 1278, IN REVERSING ITS RULING REGARDING JOINDER.
>
> THE APPELLANT WAS DENIED DUE PROCESS AND A FAIR TRIAL WHEN THE TRIAL COURT, WITHOUT LEGAL AUTHORITY TO DO SO, ENTERTAINED A MOTION TO RECONSIDER THE COURT'S PREVIOUS SEVERANCE RULING AND REVERSED ITS DECISION.
>
> **[\*P28]** [quoted supra].
>
> **[\*P29]** The decision whether to grant a motion to sever certain counts of an indictment from other counts of the indictment is

---

[2] Except, of course, that reconsideration of an acquittal is barred by the Double Jeopardy Clause.

guided by Crim.R. 8 and 14. In *State v. LaMar*, 95 Ohio St.3d 181, 2002-Ohio-2128, 767 N.E.2d 166, ¶ 49-50, the Supreme Court of Ohio explained the analysis that goes into a determination on joinder and severance:

> "The law favors joining multiple offenses in a single trial under Crim.R. 8(A) if the offenses charged 'are of the same or similar character.'" *State v. Lott* (1990), 51 Ohio St.3d 160, 163, 555 N.E.2d 293. Crim.R. 8(A) also allows joinder of two or more offenses that "are based on the same act or transaction, or are based on two or more acts or transactions connected together or constituting parts of a common scheme or plan, or are part of a course of criminal conduct." Notwithstanding the policy in favor of joinder, an accused may move to sever counts of an indictment on the grounds that he or she is prejudiced by the joinder of multiple offenses. See Crim.R. 14. * * *
>
> The state may rebut a defendant's claim of prejudicial joinder in two ways. The first way is by satisfying the "other acts" test. Id. If in separate trials the state could introduce evidence of the joined offenses as "other acts" under Evid.R. 404(B), a defendant cannot claim prejudice from the joinder. Id. See, also, *State v. Coley* (2001), 93 Ohio St.3d 253, 259-260, 2001 Ohio 1340, 754 N.E.2d 1129. The state may also negate a claim of prejudice by satisfying the less stringent "joinder test," which requires a showing "that evidence of each crime joined at trial is simple and direct." *Lott*, 51 Ohio St.3d at 163, 555 N.E.2d 293; see, also, *State v. Torres* (1981), 66 Ohio St.2d 340, 344, 20 O.O.3d 313, 421 N.E.2d 1288.

**[\*P30]** Evid.R. 404(B) provides:

> Evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show action in conformity therewith. It may, however, be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident. * * *

**[\*P31]** R.C. 2945.59 similarly permits the admission of other-acts evidence tending to show a defendant's "motive or intent, the absence of mistake or accident on his part, or the defendant's scheme, plan, or system in doing the act in question." *State v.*

10

*Kirkland,* 140 Ohio St.3d 73, 2014-Ohio-1966, 15 N.E.3d 818, ¶ 68.

**[\*P32]** Generally, evidence of other acts is admissible if (1) it is offered for a purpose other than to prove the character of a person in order to show action in conformity with that character, Evid.R. 404(B), (2) it is relevant when offered for that purpose, Evid.R. 401, and (3) the danger of unfair prejudice does not substantially outweigh its probative value, Evid.R. 403. Kirkland at ¶ 68, citing State v. Williams, 134 Ohio St.3d 521, 2012-Ohio-5695, 983 N.E.2d 1278, ¶ 20. A trial judge has considerable discretion to determine whether the specific evidence is of such a nature that it falls within one of the other purposes under Evid.R. 404(B) for which the evidence may be admitted. State v. Morris, 132 Ohio St.3d 337, 2012-Ohio-2407, 972 N.E.2d 528, ¶ 19. "Unless the trial court has 'clearly abused its discretion and the defendant has been materially prejudiced thereby, [appellate courts] should be slow to interfere' with the exercise of such discretion." Kirkland at ¶ 67, quoting State v. Hymore, 9 Ohio St.2d 122, 128, 224 N.E.2d 126 (1967).

**[\*P33]** Goldblum contends that the other act evidence offered by the State in this case was not offered for any of the permissible purposes outlined in Evid.R. 404(B) or R.C. 2945.59. The State counters that "evidence that Appellant engaged in inappropriate conduct with other young female friends of his daughter was relevant to prove a proper purpose under Evid.R. 404(B), specifically, Appellant's intent, his plan, scheme, or system, and to refute his claim that the girls were mistaken about what he was doing and that they had falsely accused him." Brief, p. 21.

**[\*P34]** We conclude that the trial court did not abuse its discretion in overruling Goldblum's motion to sever. Goldblum conceded at trial that he would occasionally manipulate the blankets on the girls who were asleep at his place. However, he testified that he did this to check to see if they were hiding any games under the blankets. Also, he testified that J.R. was mistaken about what he was doing when she woke up on the morning of February 18, 2011. According to Goldblum, he was simply checking for the cat when she woke up and saw him in the basement. The testimony of other act evidence in this case rebutted Goldblum's testimony that he was simply looking for the cat or making sure there were no games hidden underneath the girls' blankets. Furthermore, the other act evidence assisted the trier of fact in determining Goldblum's purpose or intent, especially relating to the Voyeurism charges. As we noted in Part III above, the purpose element in R.C.

11

> 2907.08(C) may be inferred "when there is no innocent, i.e., nonsexual, explanation for the offender's conduct." State v. Wilson, 192 Ohio App. 3d 189, 2011-Ohio-155, at ¶ 47, 948 N.E.2d 515. The other acts evidence rebutted Goldblum's contention that there were innocent, nonsexual explanations for his removal of the blankets and presence near the girls when they suddenly awoke.
>
> **[\*P35]** The record supports the trial court's exercise of its discretion to allow the introduction of other acts evidence. Furthermore, based on our review of the record, we conclude that the danger of unfair prejudice by allowing the other acts evidence did not substantially outweigh its probative value. Kirkland at ¶ 68, citing Williams at ¶ 20. Also, "[t]he trial court reduced any danger of unfair prejudice in its limiting instruction to the jury." Kirkland at ¶ 70. Consequently, the trial court did not abuse its discretion by overruling Goldblum's motion to sever.
>
> **[\*P36]** Goldblum's Third and Fourth Assignments of Error are overruled.

*State v. Goldblum*, *supra.*

As Petitioner's counsel correctly points out, when a state court decides on the merits a federal constitutional claim later presented to a federal habeas court, the federal court must defer to the state court decision unless that decision is contrary to or an objectively unreasonable application of clearly established precedent of the United States Supreme Court. 28 U.S.C. § 2254(d)(1); *Harrington v. Richter*, 562 U.S. 86, 131 S. Ct. 770, 785 (2011); *Brown v. Payton*, 544 U.S. 133, 140 (2005); *Bell v. Cone*, 535 U.S. 685, 693-94 (2002); *Williams (Terry) v. Taylor*, 529 U.S. 362, 379 (2000).

Instead of citing any United States Supreme Court precedent that the Ohio courts are supposed to have applied unreasonably, Goldblum merely quotes the findings of the trial court judge when he initially granted the motion to sever. Those findings were later replaced by the judge who made them upon reconsideration, so they are hardly "precedent."

The Sixth Circuit was faced with a misjoinder claim in the capital case of *Davis v. Coyle*,

12

475 F.3d 761 (6th Cir. 2007). It held:

> In considering whether the denial of severance amounted to an error warranting relief in a habeas proceeding, the issue before us is not whether the failure to sever counts for separate trials was a violation of a state rule of procedure, but whether the failure to sever denied the petitioner due process of law under the Fourteenth Amendment. *See Corbett v. Bordenkircher*, 615 F.2d 722, 724 (6th Cir. 1980). In other words, in order to obtain federal habeas relief on this claim involving state law, Davis must show that misjoinder of the counts "result[ed] in prejudice so great as to deny a defendant his . . . right to a fair trial." *United States v. Lane*, 474 U.S. 438, 446 n.8, 106 S. Ct. 725, 88 L. Ed. 2d 814 (1986).

*Id.* at 777. The Court went on to note the risk of prejudice when evidence of other crimes is admitted, but noted that such evidence can properly be admitted despite the risk. *Id.*, citing *Spencer v. Texas*, 385 U.S. 554 (1967) (reaffirmed by *Marshall v. Lonberger*, 459 U.S. 422 (1983)), where

> the Supreme Court considered the constitutionality of a Texas recidivist statute under which the jury trying the pending criminal charge was informed of a defendant's prior convictions during the guilt phase. The trial court instructed the jury that these prior convictions were to be considered for sentencing purposes only, and could not be taken into account in determining guilt on the pending charge. The Court recognized that evidence of a prior conviction might be admitted, among other reasons, to prove an element of the indicted offense. See id. at 560. Nevertheless, in such a situation, "the jury learns of prior crimes committed by the defendant, but the conceded possibility of prejudice is believed to be outweighed by the validity of the State's purpose in permitting introduction of the evidence." Id. at 561. The Court concluded that the prejudice suffered by a defendant in such a case does not rise to the level of a violation of due process:

*Id.* at 777-78.

Here the Second District determined that evidence of Goldblum's misconduct as to one victim was admissible as to others because it showed *modus operandi*, a purpose clearly permitted by Ohio R. Evid. 404(B) and Ohio Revised Code § 2945.59.

13

The most frequent argument over admission of prior bad acts is whether a prior felony conviction will be admitted. The most usual reason for defendants in criminal cases not taking the stand in their own defense is that they can then be cross-examined about prior convictions. But the United States Supreme Court has never held that even the admission of a prior felony conviction is a constitutional violation. "There is no clearly established Supreme Court precedent which holds that a state violates due process by permitting propensity evidence in the form of other bad acts evidence." *Bugh v. Mitchell*, 329 F.3d 496, 512 (6th Cir. 2003), noting that the Supreme Court refused to reach the issue in *Estelle v. McGuire*, 502 U.S. 62 (1991).

The Second District followed the Ohio rule which permits joinder when the "other acts" evidence would be admissible in any event. That rule does not offend the United States Constitution. Mr. Goldblum's seventh ground for relief is therefore without merit.

**Conclusion**

Based on the foregoing analysis, it is respectfully recommended that the Petition be dismissed with prejudice. Because reasonable jurists would not disagree with this conclusion, Petitioner should be denied a certificate of appealability and the Court should certify to the Sixth Circuit that any appeal would be objectively frivolous and therefore should not be permitted to proceed *in forma pauperis*.

April 6, 2017.

s/ *Michael R. Merz*
United States Magistrate Judge

**NOTICE REGARDING OBJECTIONS**

Pursuant to Fed. R. Civ. P. 72(b), any party may serve and file specific, written objections to the proposed findings and recommendations within fourteen days after being served with this Report and Recommendations. Such objections shall specify the portions of the Report objected to and shall be accompanied by a memorandum of law in support of the objections. If the Report and Recommendations are based in whole or in part upon matters occurring of record at an oral hearing, the objecting party shall promptly arrange for the transcription of the record, or such portions of it as all parties may agree upon or the Magistrate Judge deems sufficient, unless the assigned District Judge otherwise directs. A party may respond to another party's objections within fourteen days after being served with a copy thereof.  Failure to make objections in accordance with this procedure may forfeit rights on appeal. *See United States v. Walters*, 638 F.2d 947, 949-50 (6th Cir. 1981); *Thomas v. Arn*, 474 U.S. 140, 153-55 (1985).